**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| J.D., a minor, by and through their Next Friends, JANE DOE And JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>ROCKWOOD R-VI SCHOOL DISTRICT, HECTOR RAMIREZ, individually, and PAUL GODWIN, individually,<br><br>Defendants. | ) | Case No.<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

COME NOW Plaintiff J.D., a minor, by and through their Next Friends, Jane Doe and John Doe, and for their Complaint against Defendants Rockwood R-VI School District, Hector Ramirez, and Paul Godwin, state as follows:

J.D. was five (5) years old and one (1) week into kindergarten when they told their mother that a student at school had hurt them. Their mother reported it to the school that night. The principal answered within forty minutes, said the playground had multiple cameras, and promised to follow up. Four days later the District had the student's name; J.D. pointed them out in their own classroom. The District then left them in that classroom, at that recess, and at that lunch period for two (2) more months. No one from the District called the child abuse hotline. When J.D. stopped coming to school, the District did not remove the student they reported abused them.

It removed J.D, without telling their parents, and before the deadline the District itself had set to do so.

## PARTIES, JURISDICTION, AND VENUE

1. J.D. is a minor child, born in 2018. During the 2024-2025 school year they were a kindergarten student at Blevins Elementary School in Eureka, St. Louis County, Missouri. They are identified in this Complaint by their initials pursuant to Fed. R. Civ. P. 5.2(a)(3) because they are a minor and an alleged victim of sexual abuse.
2. Jane Doe and John Doe are the natural parents and lawful custodians of J.D. and reside in St. Louis County, Missouri. They bring this action as Next Friends of J.D. pursuant to Fed. R. Civ. P. 17(c)(2).
3. Defendant Rockwood R-VI School District (the "District") is a public school district organized under Missouri law, with administrative offices at 111 East North Street, Eureka, St. Louis County, Missouri 63025. The District operates Blevins Elementary School.
4. At all relevant times the District received federal financial assistance and was subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.
5. The District is a local educational agency within the meaning of 20 U.S.C. § 1401(19), receives federal funds under Part B of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (the "IDEA"), and at all

relevant times was subject to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").

6. Defendant Hector Ramirez ("Principal Ramirez") was at all relevant times the Principal of Blevins Elementary School and an employee and agent of the District. He is sued in his individual capacity. At all relevant times he acted under color of state law and within the course and scope of his employment.

7. Defendant Paul Godwin ("Assistant Superintendent Godwin") was at all relevant times an Assistant Superintendent of the District, and an employee and agent of the District, with supervisory authority over Blevins Elementary School and its principal. He is sued in his individual capacity. At all relevant times he acted under color of state law and within the course and scope of his employment.

8. This Court has subject-matter jurisdiction over Counts I, II, III, IV, and VI under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), because those claims arise under the Constitution and laws of the United States, and over the IDEA claim in Count VI under 20 U.S.C. § 1415(i)(2)(A) and (i)(3)(A). This Court has supplemental jurisdiction over Count V under 28 U.S.C. § 1367(a), because it arises from the same nucleus of operative facts and forms part of the same case or controversy.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2), because, upon information and belief, all Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in this District.

Assignment to the Eastern Division is proper because the claims arose in St. Louis County. E.D. Mo. L.R. 2.07.

10. Counts I, II, III, IV, and VI arise under federal law, and Missouri's statutory sovereign immunity does not apply to them. The District is a political subdivision of the State of Missouri, not an arm of the State, and is not entitled to Eleventh Amendment immunity. Count V arises under Missouri law. Defendants Ramirez and Godwin are sued in their individual capacities and are not protected by sovereign immunity, and the District has waived its sovereign immunity as to Count V to the extent alleged in that Count. § 537.610.1, RSMo.

## FACTUAL ALLEGATIONS

### A. August 23, 2024: The Initial Report

11. J.D. began kindergarten at Blevins Elementary in August 2024, in the classroom of teacher Sophie Berry ("Ms. Berry"). They were five (5) years old.

12. On the evening of Friday, August 23, 2024, J.D.'s parents took them to Mercy-GoHealth Urgent Care in Eureka because they were in pain and had not urinated all day. Jane Doe had also observed blood in J.D.'s underwear.

13. While at the urgent care office, J.D. told their parents that a student at school had inappropriately touched them at recess.

14. At 8:16 p.m. that evening, after returning home from urgent care, Jane Doe reported the disclosure to Ms. Berry through the District's ParentSquare communication system. She wrote that J.D. had told them in the doctor's office

that a student at school had inappropriately touched them at recess, and that J.D. was in pain.

15. At 8:54 p.m., Ms. Berry replied that she had forwarded the message to Principal Ramirez and that he would be reaching out.

16. At 8:56 p.m., forty minutes after the report, Principal Ramirez emailed Jane Doe directly. He wrote that he planned to look into the incident during the period of time the relevant students were at recess. He asked whether it happened on the small kindergarten playground or the big playground before lunchtime, and whether the student was in J.D.'s class. He wrote: "We have multiple cameras on the playground." He committed to following up first thing Monday morning.

17. At 9:41 p.m., Jane Doe answered each question. The incident occurred on the big playground before lunch. The student was in J.D.'s class. The student had sexually assaulted J.D.

18. From no later than 9:41 p.m. on August 23, 2024, the District had actual knowledge of a report that a five (5) year-old student in its care had suffered a dangerous sexual assault from a fellow classmate, on District property, during the school day, in a location covered by District cameras.

19. Principal Ramirez is an official of the District with authority to institute corrective measures. He had both the duty and authority to separate students, to change classroom and recess assignments, to alter supervision, to impose

discipline, to open an investigation, to refer the report to the District's Title IX Coordinator, and to call the child abuse hotline.

**B. The District's Own Rules**

20. The District's Student Code of Conduct, District Regulation 2610, prohibits a student on school grounds from intentionally touching another person's sex organs in a way that constitutes sexual contact, whether or not through clothing.

21. District Regulation 2610 defines sexual harassment to include sexually motivated physical conduct and other physical conduct of a sexual nature that is severe, persistent, or pervasive enough to affect a student's ability to participate in or benefit from an educational program, or that creates an intimidating, threatening, or abusive educational environment. It directs reports of sexual harassment to the District's Title IX Coordinator under Regulation 1320, the District's Title IX grievance procedure.

22. District Regulation 2610 also prohibits bullying, which it defines to include intimidation, unwarranted aggressive behavior, and harassment, including physical actions, and it refers to District Policy 2612. Regulation 2610 designates the building principal to receive reports of bullying and requires that, within two (2) days of receiving a report, the principal or a designee initiate an investigation, and that the investigation be completed within ten (10) school days from the date of the written report unless good cause exists to

extend it. Regulation 2610 identifies § 160.775, RSMo as a source of the District's authority over bullying.

23. District Policy 2815 mandates that District counseling staff in consultation with other staff members, is responsible for the initial assessment of students' academic progress as well as identification of personal/social concerns. Where necessary, after consulting with and obtaining informed and written consent of parents/guardians, the district will make available appropriate services including individual and small group counseling, crisis counseling, referral to other agencies or professional resources, and vocational and educational placement. The District will cooperate with and assist other agencies (including Special School District of St. Louis County) with the diagnosis and treatment of students referred for assessment and evaluation services.

24. Pursuant to District Regulation 2710, school employees, and contractors and volunteers if a relationship with the child was established through the school or school-related activities, ("School Personnel") are required to immediately notify the Division's Child Abuse Hotline at 1-800-392-3738 when School Personnel have reasonable cause to suspect that child has been or may be subjected to abuse or neglect or observes a child being subjected to conditions or circumstances that would reasonably result in abuse or neglect, or when School Personnel receive a report from a student alleging abuse or neglect on the part of a teacher or other school employee. In addition, in cases where a student reports alleged sexual misconduct on the part of a teacher or other

school employee to School Personnel, such School Personnel must report the allegation to the District's Title IX Coordinator, and the allegations will be investigated under the District's Title IX procedures. Child abuse is generally defined as any physical injury, sexual abuse or emotional abuse inflicted on a child other than by accidental means by those responsible for the child's care, custody and control. However, for mandated reporters such as teachers, principals, or other School Personnel, the term "abuse" is not limited to abuse inflicted by a person responsible for the child's care, custody and control, but shall also include abuse inflicted by any other person.

25. District Regulation 2310 - Student Absences and Excuses indicates that, pursuant to § 167.031, RSMo, a student may be excused from regular school attendance, or any part thereof, if the student is unable to attend due to mental or behavioral health concerns. The District would direct families to submit documentation from a mental health provider licensed under Chapters 334 or 337 of the Missouri Revised Statutes acting within their authorized scope of practice stating that the student is not able to regularly attend school due to such concerns. The Policy goes on to recognize that an integral part of the learning experience is the interaction between students and teachers. Students who are absent from school are not able to participate in class discussions, small-group activities, or class experiments. They miss out on explanations of concepts and ideas that will appear on homework assignments and tests.

Missing school results in poor work habits, lower grades, lower self-esteem, and a lack of self-discipline.

26. District Policy 2100 recognizes the duty of the District to provide a free and appropriate education (FAPE) for students with disabilities. Students with disabilities are those who, because of certain atypical characteristics, have been identified by professionally qualified personnel as requiring special educational planning and services. Students with disabilities will be identified on the basis of physical, health, sensory, and/or emotional handicaps, behavioral problems or observable exceptionalities in mental ability. It is possible that a student may have more than one type of disability. The District's programs and services available to meet the needs of these students will be in accordance with The Individuals with Disabilities Education Act, The Rehabilitation Act of 1973, Section 504, and §162.670-162.999, R.S.Mo (2002), Missouri Special Education Services. In addition, the identification of students with disabilities and the services provided by the District will be in accordance with the regulations and guidelines of the Missouri Department of Elementary and Secondary Education's (DESE) Current Plan for Part B of The Education of the Handicapped Act, as amended. The duty of the District is to ensure equal educational opportunities in course offerings, guidance and counseling, test procedures, extra-curricular activities, discipline procedures and student support services.

27. District Policy 2130 states that it shall also be a violation of District policy for any teacher, administrator, or other school personnel to tolerate sexual harassment or harassment because of a student's race, color, religion, national origin, ethnicity, disability, sexual orientation, perceived sexual orientation, gender identity, or protective hairstyle as defined by the Policy, by a student, teacher, administrator, other school personnel, or by any third parties who are participating in, observing, or otherwise engaged in activities, including sporting events and other extracurricular activities, under the auspices of the District. The Policy goes on to state that school system will act to promptly investigate all complaints, either formal or informal, verbal or written, of unlawful harassment or unlawful discrimination because of race, color, religion, sex, national origin, ethnicity, disability, sexual orientation, perceived sexual orientation, gender identity, or protective hairstyle; to promptly take appropriate action to protect individuals from further harassment or discrimination; and, if it determines that unlawful harassment or discrimination occurred, to promptly and appropriately discipline any student, teacher, administrator, or other school personnel who is found to have violated this Policy, and/or to take other appropriate action reasonably calculated to end the harassment/discrimination.

28. District Regulation 2130 goes on to clarify that any teacher, administrator, or other school official who has or receives notice that student has or may have been the victim of sexual harassment or harassment based on race, color,

religion, sex, national origin, ethnicity, disability, sexual orientation, perceived sexual orientation, or gender identity by a student, teacher, administrator, or other school personnel of the District, or by any other person who is participating in, observing, or otherwise engaged in activities, including sporting events and other extracurricular activities, under the auspices of the District, is required to immediately report the alleged acts to the building principal or the District Compliance Officer designated by the Regulation within twenty-four (24) hours or within a reasonable time thereafter.

29. The investigation shall be completed typically within fourteen (14) days from receipt of the report. The investigator will put his/her findings in writing and will forward a copy to the District Compliance Officer within one (1) week after concluding the investigation, or within a reasonable extension of time thereafter, for good cause shown. If the District Compliance Officer is the investigator, the District Compliance Officer shall make a written report to the Superintendent upon completion of the investigation. If the complaint involves the Superintendent, the report may be filed directly with the School Board. The report shall include a determination of whether the allegations have been substantiated as factual and whether they appear to be violations of this Regulation. The District's obligation to conduct this investigation shall not be extinguished by the fact that a criminal investigation involving the same or similar allegations is also pending or has been concluded.

30. The results of the District's investigation of each complaint filed under these procedures will be reported in writing to the student's parent/guardian and the alleged harasser by the building principal or District Compliance Officer in accordance with state and federal laws regarding data or records privacy, and consistent with the privacy rights of the alleged harasser.

31. The District will discipline or take appropriate action against any student, teacher, administrator, or other school personnel who retaliates against any person who reports an incident of alleged sexual, racial, religious, ethnic, sexual orientation discrimination, disability-related harassment or violence, or any person who testifies, assists, or participates in a proceeding, investigation, or hearing relating to such harassment or violence. Retaliation includes, but is not limited to, any form of intimidation, reprisal, or harassment

32. The District Compliance Officer or building principal shall follow up regularly with the complaining student to ensure the harassment has stopped and that no retaliation has occurred.

33. Submission of a good faith complaint or report of unlawful discrimination, sexual harassment, or harassment based upon race, color, religion, disability, sex, national origin, ethnicity, sexual orientation, perceived sexual orientation, or gender identity will not affect the complainant or reporter's future employment, grades, learning, or working environment, or work assignments.

**C. The District's Deficient Inquiry**

34. On Sunday, August 25, 2024, Principal Ramirez wrote that he would check the video first thing Monday morning and speak with the adults who were at recess. He reported that he had already spoken with his assistant principal, who had noticed nothing unusual and recalled only taking a jump rope away from J.D. because it was tangling with other students, after which J.D. began to cry and could not express anything more. He wrote that the District would not permit the family to view the video.

35. On or about August 27, 2024, District personnel, upon the request of Jane Doe, had J.D. identify the responsible student in their classroom. J.D. did so. Principal Ramirez then spoke with the student they identified (the "Identified Student"). The Identified Student acknowledged physical contact with J.D., which the Identified Student reportedly characterized as accidental contact during a game.

36. From August 27, 2024 forward, the District knew the identity of the student J.D. had accused. Its own records, including its enrollment records and its ParentSquare directory, identify this student.

37. Principal Ramirez later told the Eureka Police Department that he had reviewed the recess video from August 23, 2024, that it showed J.D. and another child becoming tangled while they were jumping rope near the playground equipment, and that he observed no other interaction. The District has not produced the video, despite numerous requests and the legal obligation

to do so. *See* 20 U.S.C. 1232g; 34 CFR §99.3(6)(g); 20 U.S.C. 1232(a)(1)(A); 34 CFR §99.10(a)-§ 99.10(f); 34 CFR §106.45(10)(i)(A)-§106.45(10)(i)(D); 20 U.S.C. 1681 *et seq*.

38. Upon information and belief, the District's inquiry thus consisted of Principal Ramirez's conversation with his assistant principal, his review of the August 23 recess video, J.D.'s identification of the Identified Student, and his conversation with the Identified Student.

39. Upon information and belief, the inquiry ended there. The District did not complete an investigation or prepare a written report under Regulation 2610 and Policy 2612, did not refer the report to its Title IX Coordinator, did not initiate the grievance procedure set out in Regulation 1320, and, upon information and belief, did not speak with J.D. about the events again until November 13, 2024.

40. Upon information and belief, no employee of the District made a report to the Missouri Children's Division child abuse and neglect hotline at any time in 2024.

41. Between August 27, 2024 and October 23, 2024, nothing about J.D.'s school day changed: The District did not separate J.D. from the Identified Student. It did not change their classroom, their recess period, their lunch period, or their seating. It assigned them no dedicated supervision. It placed no restriction on the Identified Student's proximity to them and provided no support or intervention regarding sexualized behavior of the Identified Student or J.D.

**D. This Student's Conduct Continued Through October 23, 2024**

42. Over the weeks that followed, J.D. reported that the Identified Student continued to target them. The conduct they described was unwanted sexual contact where this student forcibly touched and penetrated their body. They also described other acts of violence: the Identified Student struck J.D. on their arms and back, spit on them, bit them on the arm and knee, dumped water on their head, knocked their tablet out of their hands, held their face and forced them to drink their water bottle against their will, and verbally taunted them.

43. On October 22, 2024, Ms. Berry help a parent-teacher conference wherein Jane Doe outlined the ongoing unwanted contact and behaviours by the Identified Student.

44. J.D. reported that the conduct occurred principally at recess and at lunch, near the playground equipment, and that the Identified Student had approached them.

45. J.D.'s last day of attendance at Blevins Elementary was October 23, 2024.

46. On October 28, 2024, J.D. was seen at Riverside Pediatrics. Their mother recounted the August urgent care visit, the blood she had observed, and the continuing reports from school. During that visit J.D. disclosed to the nurse practitioner that the student sometimes touched them between their legs. It was J.D.'s pediatric provider and mother, not the District, that caused the matter to enter the child protection system.

47. On November 1, 2024, Jane Doe wrote to the Blevins school counselor that she wanted to discuss everything J.D. had been telling her, and that after speaking with Children's Division, she had been advised that J.D. would not return to the classroom until there was a plan to keep J.D. and the Identified Student separate.

48. On November 4, 2024, Jane Doe sent Principal Ramirez a detailed written account of everything J.D. had described. Principal Ramirez responded that the District would review video of recess and lunch, and asked the family to supply specific dates and times for each incident.

49. On November 7, 2024, J.D. underwent a sexual assault forensic examination at SSM Health Cardinal Glennon Children's Hospital, Division of Child Protection. Colposcopic photographs were obtained. The hospital's Child Protection social worker subsequently reported to the Eureka Police Department that the examination identified specific evidence consistent with sexual assault.

50. On November 8, 2024, Jane Doe wrote to Principal Ramirez that J.D. did not feel safe returning to school, that J.D. was terrified of being touched again, and that the District had done nothing to remediate the threat.

51. Upon information and belief, on November 13, 2024, District staff interrogated J.D. without their parents, told them that their allegations were false, and attempted to influence their story.

52. On November 18, 2024, the Eureka Police Department opened an investigation. J.D.'s bloodstained underwear that Jane Doe had preserved was seized and placed into evidence. On November 19, 2024, J.D. underwent a forensic interview at the Child Advocacy Center of Greater St. Louis.

53. During the police investigation, District personnel denied that the Identified Student was even enrolled in the Rockwood School District when asked during an investigation led by Eureka Police.

**E. The District Removed J.D. But Not the Student Who Assaulted Them**

54. On December 3, 2024, Principal Ramirez invited J.D. to return, offering additional adult support in Ms. Berry's classroom and to provide monitors in close proximity at recess and lunch until the end of the semester, a mere two (2) weeks. He did not offer to remove the Identified Student from J.D.'s classroom, or commit to an additional investigation.

55. On December 6, 2024, Jane Doe wrote that her only conditions for J.D. 's return to the classroom were that the conduct stop, that the Identified Student not be in their classroom, and that the two be supervised if in proximity at lunch or recess. She wrote that J.D. did not want to change classrooms.

56. Later that day, Principal Ramirez responded that the Eureka Police Department was still investigating and that he "will not be taking any action toward any staff and/or students until I receive further notice from them." In the same email he wrote that J.D. "will need to be unenrolled if they do not attend school by January 2nd."

57. The District thus conditioned J.D.'s continued enrollment on their return to the same classroom, the same recess, and the same lunch period as the student who assaulted them. It refused to take any action despite its Title IX duty to investigate and provide safety measures. *See* 34 CFR §106.45(2)(i)(A)(B)-§106.45(2)(ii); 34 CFR §106.45(10)(i)(A)-§106.45(10)(i)(D); 20 U.S.C. 1681 *et seq*.

58. When the District set that deadline, it knew J.D.'s absence was due to their fear for their safety. It had been told in writing that J.D. was absent because of the reported abuse, that Children's Division had advised she not return until there was a plan to separate the two children, and that a police investigation was open. The District itself had declined to treat a safety-related absence as unexcused, or offer or provide alternate support and interventions in the interim under its own policies. Policy 2600 *et. seq.*

59. The District's Senior Administration had knowledge of all events described in this Complaint contemporaneous with each date as pleaded.

60. On or before December 30, 2024, before the January 2, 2025 date the District itself had set, the District unenrolled J.D. from Blevins Elementary. The District gave the Does no notice. Jane Doe discovered that her child had been unilaterally and involuntarily unenrolled on her own.

61. On January 3, 2025, Jane Doe written as Next Friend of J.D. wrote to Superintendent Curtis Cain that she had discovered on December 30 that J.D. had already been unenrolled without the family's knowledge or consent, and

requested the return of J.D.'s belongings, her transcripts, and her lunch account balance. That same day, District personnel confirmed in writing that District records showed J.D. was "no longer attending Rockwood School District."

62. The Identified Student remained enrolled in the same classroom. Upon information and belief, the District took no action as to him.

63. J.D. did not return to Blevins Elementary and is currently homeschooled.

**F. The District Never Evaluated J.D. or Provided Them a Free and Appropriate Education (FAPE)**

64. J.D. did not attend school after October 23, 2024. From that date until the District unenrolled them, the District knew, through the family's written communications of November 1, 4, 8, and December 6, 2024, that J.D. was absent because they had reported sexual abuse at school; that they had sustained physical injury; that they were terrified of being touched again; that they did not feel safe at school; and that Children's Division and the Eureka Police Department were involved.

65. Following the abuse, J.D. exhibited anxiety, fear of being touched, sleep disturbance, and regression with independent toileting. Their condition adversely affects their educational performance and substantially limits major life activities, including learning, concentrating, sleeping, and interacting with others.

66. These facts gave the District reason to suspect that J.D. needed to be evaluated for special education and related services, including counseling, psychological, and social work services, or accommodations and services under Section 504.

67. The District did not refer J.D. for an evaluation, did not request their parents' consent to evaluate them, did not convene an IEP team, a Section 504 team, or any other team to consider their needs, and did not give their parents prior written notice of any refusal to evaluate them.

68. During the more than two months that J.D. was absent, the District provided them no instruction or services of any kind: no homebound instructional suppotts, no interim or alternative educational services, no counseling, and no plan for their safe return other than their return to the same classroom, recess, and lunch period as the Identified Student.

69. The District then ended J.D.'s enrollment, and with it their educational placement, without notice to their parents, without a meeting, and without any opportunity to be heard.

**G. Damages**

70. J.D. has incurred and will incur expenses for medical, psychological, and counseling care, and educational expenses, and has lost the educational opportunities and benefits of their kindergarten year at Blevins Elementary.

71. J.D. has also sustained physical pain and physical injury to their genital area, mental injury, emotional distress, psychological injury, fear, and humiliation,

and endured a forensic medical examination, a forensic interview, a Children's Division home visit, and repeated investigative questioning.

72. J.D.'s parents have incurred and will continue to incur reasonable and necessary medical, psychological, counseling, and educational expenses on their behalf. Plaintiff seeks no duplicate recovery of any item of damages.

## COUNT I
## VIOLATION OF TITLE IX, 20 U.S.C. § 1681: DELIBERATE INDIFFERENCE TO PEER SEXUAL HARASSMENT (AGAINST DEFENDANT ROCKWOOD R-VI SCHOOL DISTRICT)

73. Plaintiff realleges and incorporates paragraphs 1 through 72 as though fully set forth herein.

74. The District is an educational program or activity receiving federal financial assistance.

75. J.D. was subjected to unwelcome sexual harassment by a fellow student. The harassment was sexual in nature and included repeated touching and penetration of their genital area, accompanied by physical aggression and humiliation.

76. The harassment was so severe, pervasive, and objectively offensive that it deprived J.D. of access to the educational opportunities and benefits the District provides. After October 23, 2024, they did not return, because they could not safely return to the same classroom as the student they had accused.

77. The District had actual knowledge of the harassment. Principal Ramirez, an official with authority to institute corrective measures on the District's behalf,

received the report on August 23, 2024, acknowledged it in writing that night, and learned the identity of the accused student on August 27, 2024.

78. The District was deliberately indifferent to that knowledge. Its response was clearly unreasonable in light of the known circumstances. Knowing that a J.D. had reported sexual touching by an identified classmate, and that they were in pain, the District, between August 27, 2024 and October 23, 2024:

(a) left the Identified Student in J.D.'s classroom, at their recess, and at their lunch period, with no restriction of any kind on the Identified Student's access to them;

(b) made no change to J.D.'s supervision, seating, classroom, recess, or lunch assignment;

(c) conducted only a limited initial inquiry, consisting of speaking with school personnel and the Identified Student and reviewing the August 23, 2024 recess video, and, upon information and belief, did not complete an investigation or prepare a written report under Regulation 2610 and Policy 2612, did not refer the reported sexual misconduct to its Title IX Coordinator, and did not initiate its Regulation 1320 grievance procedure;

(d) made no report to the Missouri Children's Division; and

(e) took no step reasonably calculated to prevent further harassment while J.D. remained in daily contact with the student they had accused.

79. After receiving actual notice and identifying the accused student, the District kept J.D. in the same classroom, recess period, and lunch period as that student without any protective measure reasonably calculated to prevent further harassment. J.D. later disclosed that, during that period of continued exposure, the Identified Student again touched them sexually and was physically and verbally aggressive toward them. The District's clearly unreasonable response subjected J.D. to further harassment and made them vulnerable to it, and contributed to their inability to participate safely in the District's educational program.

80. The District's indifference continued after it received the November 2024 reports. It demanded that J.D.and their parents supply dates and times as a precondition to action, refused to take any action as to the Identified Student, told the Eureka Police Department it had no such student enrolled, and conditioned J.D.'s enrollment on their returning to the same room as the student they had accused.

81. As a direct and proximate result of the District's deliberate indifference after August 27, 2024, J.D. lost the educational opportunities and benefits of their kindergarten year, and expenses were incurred on their behalf for medical evaluation and treatment of their physical injuries, including their forensic medical examination, and for their education.

82. As a further direct and proximate result, J.D. sustained physical pain and physical injury, mental injury, and emotional distress, and expenses were

incurred on their behalf for psychological and counseling care. Plaintiff seeks all damages for those injuries that are recoverable under Title IX.

WHEREFORE, Plaintiff prays for judgment against Defendant Rockwood R-VI School District on Count I for compensatory damages in an amount to be determined at trial, or in the alternative nominal damages, for their attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), for pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF TITLE IX, 20 U.S.C. § 1681:
## RETALIATORY EXCLUSION FROM THE EDUCATIONAL PROGRAM
## (AGAINST DEFENDANT ROCKWOOD R-VI SCHOOL DISTRICT)

83. Plaintiff realleges and incorporates paragraphs 1 through 72 as though fully set forth herein.

84. Title IX prohibits a federally funded school from retaliating against a student because sex-based harassment of that student was reported, and from excluding a student from its educational program on that basis.

85. J.D. and their parents engaged in protected activity when they reported sexual harassment to the District on August 23, 2024; reported its continuation to the school counselor and Principal Ramirez on November 1, 4, and 8, 2024; cooperated with the police and Children's Division investigations; and on December 6, 2024 asked that the Identified Student be removed from J.D.'s classroom.

86. The District took adverse action against J.D. when it unenrolled them on or before December 30, 2024.

87. The unenrollment was causally connected to the protected activity. Among other things:

(a) Principal Ramirez announced the unenrollment deadline in the same email in which he refused J.D.'s request that the Identified Student be moved and refused to take any action as to any student or staff member;

(b) the District set the deadline knowing that J.D.'s absence resulted from the reported abuse, from Children's Division's advice, and from a pending police investigation, and after having itself treated a safety-related absence as excused in August 2024;

(c) the District made J.D.'s return conditional on their rejoining the student they had accused;

(d) the District carried out the unenrollment before its own stated deadline and without notice to J.D.'s parents;

(e) the District unenrolled J.D. on or before December 30, 2024, following the family's written reports of November 1, 4, and 8, 2024 and the family's December 6, 2024 request for protective measures, and before the January 2, 2025 deadline Principal Ramirez had communicated; and

(f) the District removed the child who reported the harassment and left the accused student enrolled and took no action as to the accused student.

88. Upon information and belief, the decision to unenroll J.D. was made or approved by Principal Ramirez, who set the January 2, 2025 deadline, with the knowledge of Assistant Superintendent Godwin.

89. Upon information and belief, no District policy required the unenrollment of a student whose absence the District knew to be safety-related, and no District policy authorized unenrollment before the deadline the District had communicated to the family, or without notice to the family.

90. The District's stated reason, nonattendance, was a pretext. The District knew why J.D. was absent and had the means to end the absence by offering an appropriate safety plan.

91. As a direct and proximate result, J.D. was excluded from the District's educational program and sustained the damages alleged above.

WHEREFORE, Plaintiff prays for judgment against Defendant Rockwood R-VI School District on Count II for compensatory damages in an amount to be determined at trial, or in the alternative nominal damages, for their attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), for pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1983:
## FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS
## (AGAINST ALL DEFENDANTS)

92. Plaintiff realleges and incorporates paragraphs 1 through 72 as though fully set forth herein.

93. Defendants Ramirez and Godwin acted at all relevant times under color of state law. The District is a "person" subject to suit under 42 U.S.C. § 1983.

94. Missouri law provides each child a fundamental and universal right to education. Mo. Const. Art. IX, § 1(a); *State ex rel. Roberts v. Wilson*, 297 S.W. 419, 420 (Mo. App. 1927).

95. Having enrolled J.D. in its kindergarten, the District conferred and recognized that entitlement. J.D. therefore had a property interest in their continued enrollment and their public education that is protected by the Due Process Clause of the Fourteenth Amendment. *Goss v. Lopez*, 419 U.S. 565, 574 (1975).

96. Defendants deprived J.D. of that property interest when the District unenrolled them on or before December 30, 2024. The unenrollment was not a brief suspension; it was a complete and indefinite exclusion from the District's educational program.

97. Defendants provided no process before the deprivation. They gave J.D. and their parents no notice that they would be unenrolled on or before December 30, 2024, no statement of the reasons, no meeting, and no opportunity to be heard or to show that J.D.'s absence was caused by the reported abuse and the District's own failure to separate them from the Identified Student. The only notice the District ever gave stated a deadline of January 2, 2025, and the District acted before that deadline.

98. No emergency excused the absence of notice and an opportunity to be heard. J.D. posed no danger to persons or property and no threat of disruption to the academic process.

99. Upon information and belief, Defendant Ramirez made the decision to unenroll J.D., and Defendant Godwin, with actual knowledge of the circumstances of their absence, approved that decision or knowingly acquiesced in it.

100. The District is liable for the deprivation because it was caused by:

(a) the decision of District officials with policymaking authority over student enrollment and withdrawal;

(b) the ratification of that decision by the District's Superintendent by and through the Board of Education, who was informed in writing on January 3, 2025 that J.D. had been unenrolled without her family's knowledge or consent and who did not reverse or remedy it; and

(c) upon information and belief, a District custom or practice of unenrolling absent students without notice or an opportunity to be heard, and the District's failure to train its administrators on the process due before excluding a student, in deliberate indifference to the obvious risk that students would be deprived of their education without due process.

101. The right of a public school student to notice and an opportunity to be heard before exclusion from school was clearly established by *Goss* decades before December 2024. No reasonable school administrator could have believed it lawful to unenroll a student without notice to thier parents, before the administrator's own stated deadline, while knowing that thier absence resulted from reported sexual abuse.

102. Defendants Ramirez and Godwin acted with reckless or callous indifference to J.D.'s federally protected rights, entitling Plaintiff to punitive damages against each of them individually. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

103. As a direct and proximate result, J.D. was excluded from public school, lost the remainder of their kindergarten year, and sustained the damages alleged above, including emotional distress and humiliation.

WHEREFORE, Plaintiff prays for judgment against Defendants Rockwood R-VI School District, Hector Ramirez, and Paul Godwin, jointly and severally, on Count III for compensatory damages in an amount to be determined at trial, or in the alternative nominal damages, for punitive damages against Defendants Hector Ramirez and Paul Godwin individually in an amount sufficient to punish them and deter like conduct, for a declaration that Defendants violated J.D.'s right to procedural due process, for an order requiring the District to correct its records to reflect that J.D.'s absence was excused and that their expulsion was without notice, for their attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), for pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

## COUNT IV
## VIOLATION OF 42 U.S.C. § 1983:
## FOURTEENTH AMENDMENT EQUAL PROTECTION
## (AGAINST ALL DEFENDANTS)

104. Plaintiff realleges and incorporates paragraphs 1 through 72 as though fully set forth herein.

105. The Equal Protection Clause of the Fourteenth Amendment prohibits public school officials from intentionally discriminating against a student on the basis of sex, including by responding with deliberate indifference to known sexual harassment of a student by their peers. Title IX does not displace that constitutional protection. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).

106. Defendant Ramirez had actual knowledge, no later than August 27, 2024, that J.D. had reported sexual touching by an identified classmate who remained in their classroom, recess, and lunch period, and he received the family's detailed reports of continued sexual contact in November 2024. Defendant Godwin had actual knowledge of those reports no later than early December 2024.

107. Defendants' response was clearly unreasonable in light of the known circumstances. They left the Identified Student in daily contact with J.D.; made no change to their supervision; did not complete an investigation, refer the report to the Title IX Coordinator, or report to Children's Division; refused to take any action as to the Identified Student; and excluded J.D. from school instead.

108. Defendants treated J.D., the female student who reported sexual abuse, less favorably than the student they accused: the District removed them from school and left them in place without consequence. Upon information and belief, Defendants respond to reports of physical aggression and other

misconduct that is not sexual in nature by investigating, separating the students, and imposing discipline and their different treatment of J.D. was because of their sex and the sexual nature of the harassment they reported.

109. The District is liable because the deprivation was caused by the decisions and acquiescence of officials with final policymaking authority, by the ratification described in Count III, and, upon information and belief, by a custom of failing to investigate or respond to reports of student-on-student sexual misconduct among young children and a failure to train administrators to respond to such reports, in deliberate indifference to the obvious risk that students would be denied equal protection based upon gender or gender identity or expression.

110. The right of a student to be free from a school official's deliberate indifference to known peer sexual harassment was clearly established before August 2024.

111. Defendants Ramirez and Godwin acted with reckless or callous indifference to J.D.'s federally protected rights, entitling Plaintiff to punitive damages against each of them individually. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

112. As a direct and proximate result, J.D. was subjected to further sexual contact and physical aggression, was excluded from school, and sustained the damages alleged above.

WHEREFORE, Plaintiff prays for judgment against Defendants Rockwood R-VI School District, Hector Ramirez, and Paul Godwin, jointly and severally, on Count IV for compensatory damages in an amount to be determined at trial, or in the alternative nominal damages, for punitive damages against Defendants Hector Ramirez and Paul Godwin individually in an amount sufficient to punish them and deter like conduct, for their attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), for pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

## COUNT V
## NEGLIGENT SUPERVISION AND BREACH OF MINISTERIAL DUTIES
## (AGAINST DEFENDANTS RAMIREZ AND GODWIN, AND AGAINST DEFENDANT ROCKWOOD R-VI SCHOOL DISTRICT TO THE EXTENT OF ITS WAIVER OF SOVEREIGN IMMUNITY)

113. Plaintiff realleges and incorporates paragraphs 1 through 72 as though fully set forth herein.

114. School officials owe the students in their charge a duty to exercise reasonable care to supervise them and to protect them from reasonably foreseeable harm, including harm inflicted by other students. That duty became specific to J.D. no later than August 27, 2024, when Defendant Ramirez knew that J.D. had reported sexual contact by an identified classmate who remained in daily contact with them.

115. Defendants were also subject to the following duties, each of which was mandatory, left no discretion as to whether to act, and was owed to J.D.:

(a) under Regulation 2610 and Policy 2612, to initiate an investigation within two (2) days of receiving the report and to complete it within ten (10) school days;

(b) under Regulations 2610 and 1320, to direct the report of sexual harassment to the District's Title IX Coordinator and initiate the District's Title IX grievance procedure;

(c) under § 210.110, RSMo and § 210.115, RSMo, upon reasonable cause to suspect that J.D. had been subjected to sexual abuse, to report immediately to the Children's Division;

(d) under § 160.261, RSMo and District Regulation 2673 requires school staff to report to law enforcement acts committed on school property that would constitute rape, sodomy, sexual abuse, sexual misconduct, harassment, etc.

(e) under Regulations 26-02674, the District should have assessed J.D. for education support needs.

116. Defendants breached those duties. They did not separate J.D. from the Identified Student or alter their supervision; did not complete an investigation or prepare a written report; did not refer the report to the Title IX Coordinator; did not report to Children's Division or law enforcement; and unenrolled J.D. without notice or due process.

117. Defendants Ramirez and Godwin are not entitled to official immunity, because the duties described above were ministerial. In the alternative,

Defendants Ramirez and Godwin acted in bad faith or with malice, including, upon information and belief, by making, causing, or knowingly permitting the representation to the Eureka Police Department that the District had no student enrolled under the name J.D. had given, after the District had itself identified that student on August 27, 2024, and by unenrolling J.D. before the District's own deadline and without notice to her parents.

118. The public duty doctrine does not apply. The duties alleged were owed to J.D. individually, as an identified student who had reported a specific danger from an identified classmate, and not to the public at large.

119. At all relevant times the District had purchased liability insurance through the Missouri United School Insurance Council (MUSIC), or adopted a self-insurance plan, which covers claims of negligence causing bodily injury and personal injury to students of the kind alleged in this Count. The District has therefore waived its sovereign immunity for this Count to the extent of that coverage. § 537.610.1, RSMo.

120. As a direct and proximate result of Defendants' negligence, J.D. was subjected to further sexual assaults and physical attacks between August 27, 2024 and October 23, 2024, was excluded from school, and sustained the damages alleged above, including physical pain and injury, mental injury, and emotional distress, and medical, psychological, counseling, and educational expenses were incurred on their behalf.

WHEREFORE, Plaintiff prays for judgment against Defendants Hector Ramirez and Paul Godwin, and against Defendant Rockwood R-VI School District to the extent of its waiver of sovereign immunity, on Count V for compensatory damages in an amount to be determined at trial, for their costs, for pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

## COUNT VI
## DENIAL OF A FREE APPROPRIATE PUBLIC EDUCATION: IDEA, 20 U.S.C. §1400 ET SEQ., AND SECTION 504, 29 U.S.C. § 794 (AGAINST DEFENDANT ROCKWOOD R-VI SCHOOL DISTRICT)

121. Plaintiff realleges and incorporates paragraphs 1 through 72 as though fully set forth herein.

122. J.D. resided within the District and was enrolled in. The District must ensure that all children with disabilities residing within its boundaries who need special education and related services are identified, located, and evaluated, and must make a free appropriate public education ("FAPE") available to them. 20 U.S.C. §§ 1412(a)(1), (a)(3); 34 C.F.R. § 300.111; § 162.700, RSMo.; § 162.945, RSMo.

123. As a recipient of federal financial assistance, the District must also identify and locate every qualified person residing in its jurisdiction who is not receiving a public education, evaluate any student who, because of a disability, needs or is believed to need special education or related services, and provide a FAPE to each such student. 34 C.F.R. §§ 104.32, 104.33, 104.35.

124. J.D. is a child with a disability within the meaning of 20 U.S.C. § 1401(3) and 34 C.F.R. § 300.8 and a qualified individual with a disability under Section

504. In the alternative, the District had reason to suspect that they were a child with a disability.

125. The District's child-find obligation arose no later than November 2024, when it knew the facts alleged above.

126. The District denied J.D. a FAPE by:

(a) failing to refer them for, or conduct, an evaluation;

(b) failing to give their parents prior written notice of its refusal to evaluate them, 34 C.F.R. § 300.503;

(c) failing to provide any instruction, related services, or accommodations during their absence; and

(d) terminating their educational placement by unenrolling them without notice to or participation by their parents, 20 U.S.C. § 1415(b)(3); 34 C.F.R. §§ 300.501, 300.503; 34 C.F.R. § 104.36.

127. These violations impeded J.D.'s right to a FAPE, significantly impeded their parents' opportunity to participate in decisions about the provision of a FAPE to them, and caused a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii).

128. The District's denial of a FAPE under Section 504 was intentional or, at a minimum, deliberately indifferent to J.D.'s federally protected rights. The District knew of their trauma, their absence, and the substantial likelihood that they would receive no education at all without services, and it chose to unenroll them instead. Plaintiffs need not show bad faith or gross

misjudgment. *A.J.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. ___ (2025).

129. To the extent this Count seeks compensatory damages under Section 504, a remedy the IDEA does not provide, exhaustion of IDEA procedures is not required. *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142 (2023).

130. As a direct and proximate result, J.D. lost the educational opportunities and benefits of their kindergarten year, and educational, psychological, and counseling expenses were incurred on their behalf.

WHEREFORE, Plaintiff prays for judgment against Defendant Rockwood R-VI School District on Count VI for an award of compensatory education services, reimbursement of educational, psychological, and counseling expenses incurred on their behalf, compensatory damages under Section 504 in an amount to be determined at trial, their attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B) and 29 U.S.C. § 794a(b), for pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**CARDINAL LAW**

/s/ Jacob Chinnery
Jacob Chinnery, #77909MO
211 West Main Street
P.O. Box 1144
Steelville, Missouri 65565
Telephone: (573) 885-1400
Facsimile: (573) 306-4134
jchinnery@molaw.org

Attorneys for Plaintiffs